UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROLANDO PALOMO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-0745 (RWR) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("SSA") denying him childhood disability benefits. Now before the Court is defendant's motion for judgment of affirmance. For the reasons discussed below, the Court grants defendant's motion.

I.  BACKGROUND

Plaintiff's father, Quirino Palomo, was "a regular US Army Bataan Defender and a guerilla fighter during the dark days of Japanese Occupation of the Philip[p]ines who died a US citizen." Compl. at 1. Based on his father's status as a wage earner and United States citizen, *see id.*, plaintiff submitted an application to the Social Security Administration ("SSA") for child's insurance benefits on August 24, 2000.¹ A.R. 49-54. He reported that he suffered from pulmonary tuberculosis since March 1967, at which time he would have been about 15 years of

---

¹ Plaintiff had filed an application for childhood disability benefits previously, and that request was denied on August 19, 1996. A.R. 18

age. *See* A.R. 93. He had obtained medical treatment at the Methodist Medical Mission, Mobile X-ray Clinic, in 1967, at the Tarlac Health Center in 1968, at the Philippine Tuberculosis Society in July 1982, and at the Angeles City Medical Laboratory in March 2000. *See* A.R. 95-96. SSA denied plaintiff's application in April 2001 for the following reasons:

> You said you have been disabled since 03/07/67 due to Tuberculosis. We have determined that your condition was not disabling on any date through 10/01/74, when you were last insured for disability benefits. In deciding this, we studied your records, including medical evidence and your statements, and considered your age, education, training and work experience in determining how your condition affected your ability to work. According to the Disability Report that you completed, no records are available for the time period 10/1970 through 10/1974.

A.R. 26.

Plaintiff timely requested reconsideration of the April 2001 determination. A.R. 30. He mentioned in this request that his pulmonary tuberculosis "was so severe (far-advanced) to the extent that on moderate exertion, it would cause [him] to cough out blood-streaked sputum." *Id.* This condition persisted, plaintiff stated, "[f]rom the early part of 1967 to over 10 years," and has severely restricted his ability to make a living. *Id.* SSA concluded that the original determination was proper, and that available medical records "do not show that [he was] totally disabled since 1967." A.R. 32.

Plaintiff timely requested review by an Administrative Law Judge ("ALJ"), and waived his right to a hearing. A.R. 34, 36-37. In his September 22, 2005 decision, the ALJ concluded that plaintiff is not entitled to childhood disability benefits, A.R. 23, and the Appeals Council adopted the ALJ's decision on July 24, 2006. A.R. 7, 10.

## II.  DISCUSSION

The Court may affirm SSA's decision only if it is supported by substantial evidence in the record, and is not tainted by an error of law.  *See Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987); *see also* 42 U.S.C. § 405(g).  Substantial evidence "is such evidence as a reasonable mind might accept as adequate to support a conclusion." *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Although the ALJ's decision is entitled to considerable deference, the Court still must ensure that substantial evidence supports the decision.  *See Davis v. Shalala*, 862 F. Supp. at 4.

In order to qualify for childhood disability benefits, the claimant must show that, at the time of his application, he was under a disability which began before he attained 22 years of age.[2] *See* 20 C.F.R. § 404.350.  "The term 'disability' means . . . [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A claimant

---

[2]   A claimant is "entitled to child's benefits on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died" if he applies for such benefits and if he is:

1. the insured person's child, based upon a relationship described in 20 C.F.R. §§ 404.355 through 404.359;
2. dependent on the insured, as defined in 20 C.F.R. §§ 404.360 through 404.365;
3. unmarried; and
4. 18 years old or older and has a disability that began before he became 22 years old.

*See* 20 C.F.R. § 404.350(a).  Plaintiff meets "all of the nondisability requirements" for childhood disability benefits.  A.R. 19.

whose "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work," may be determined to be "under a disability." 42 U.S.C. § 423(d)(2)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is the claimant's burden to "furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A).

There is a five-step evaluation process to determine whether a claimant, including a claimant applying for child's disability benefits, is disabled. *See* 20 C.F.R. § 404.1520(a). First, SSA considers a claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If he is working and his work is substantial gainful activity, he is not disabled regardless of his medical condition or age, education, and work experience. 20 C.F.R. § 404.1520(b). Second, SSA considers the medical severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If he has neither an impairment nor a combination of impairments of a certain duration, the claimant is not disabled. *Id.* Third, SSA again considers the medical severity of the claimant's impairment and determines both whether it meets or equals a recognized impairment and is of a certain duration. 20 C.F.R. § 404.1520(a)(iii); *see* 20 C.F.R. § 404, Subpart P, App. 1 (Listing of Impairments). Fourth, SSA assesses the claimant's residual functional capacity and past relevant work. 20

C.F.R. § 404.1520(a)(4)(iv).  If he still can perform past relevant work, he is not disabled.  *Id.*  Fifth, SSA assesses the claimant's residual functioning capacity, age, education and work experience in order to determine whether he can adjust to other work.  20 C.F.R. § 404.1520(a)(4)(v).  If he cannot make an adjustment to other work, he is disabled.  *Id.*  The claimant bears the burden of production and proof in the first four steps of the process.  *See Stankiewicz v. Sullivan*, 901 F.2d 131, 133 (D.C. Cir. 1990).  Only after reaching the fifth and final step does SSA bear the burden of showing that jobs exist for the applicant.  *See id.*; *see also Brown v. Bowan*, 794 F.2d 703, 706 (D.C. Cir. 1986).

Here, the ALJ concluded that plaintiff "had no severe impairment or combination of impairments prior to age 22[,]" and reached "[a] finding of not disabled . . . without consideration of the remaining steps in the sequential evaluation process."  A.R.  22.

1.  Step 1: Substantial Gainful Activity

Work a claimant has performed "may show that [he is] able to work at the substantial gainful activity level."  20 C.F.R. § 404.1571.  Substantial work activity is "work activity that involves doing significant physical or mental activities."  20 C.F.R. § 404.1572(a).  Gainful work activity is done "for pay and profit," and work activity is gainful "if it is the kind of work usually done for pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).

Plaintiff reported that he worked at some unspecified time after the alleged onset of his disability.  *See* A.R. 93.  The ALJ found that plaintiff "has no vocationally relevant past work experience," and  concluded that plaintiff "has not engaged in substantial gainful activity since his alleged onset date."  A.R. 19.

2.  Step 2: Severity of Impairment

The claimant's impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and be "established by medical evidence consisting of signs, symptoms, and laboratory findings." 20 C.F.R. § 404.1508. If a claimant has no "impairment or combination of impairments which significantly limits [his] physical or mental ability to do basic work activities," SSA will find that he "do[es] not have a severe impairment and [he is], therefore, not disabled." 20 C.F.R. § 1520(c).

Before the ALJ were few medical records regarding plaintiff's medical treatment, and "only three exhibits . . . actually refer[red] to medical care received by the [plaintiff] prior to October 1, 1974," his twenty-second birthday. A.R. 20.

Dr. Melanio L. Cabaltica, the Medical Director of the Methodist Church Mobile Clinic and X-ray Unit from 1958 to 1970, recalled that clinic personnel screened "thousands of people" in remote areas of the Philippines, many of whom were diagnosed with and treated for pulmonary tuberculosis, a condition "endemic to the poor segment of the population." Dr. Cabaltica left the clinic in 1970, and the clinic folded in 1974 or 1975 for lack of funding. *Id.* He stated that "it is entirely possible that [plaintiff] was one of the Clinic's patients." A.R. 128. *Id.* However, he had "no specific recollection of [plaintiff's] case." *Id.*

Mrs. Lydia B. Jimenez, formerly a bookkeeper at the clinic, certified that plaintiff received "a check-up during one of the now defunct Methodist Mobile Clinic and X-ray Unit's 1967 visit in Patling, Capas, Tarlac, and was found to have a pulmonary [tuberculosis]." A.R.

122. She further stated that the clinic's records were destroyed after the clinic ceased operations in 1974. *Id.*

On August 23, 2000, Dr. Esmeraldo de Guzman, Jr. described plaintiff's medical history as follows:

> The present condition of the patient, described as frequent body malaise, shortness of breath and chest palpitations ("kumakaba") started in 1996. The shortness of breath was secondary to possible residuals of previous PTB. The patient's palpitations was [sic] described more as nervous episodes that unpredictably will come and give so much fright to the patient.
>
> The patient have [sic] a history of being treated for PRB from 1967 to 1968.
>
> He had bouts of occasional Bronchitis and Peripheral Neuropathy and was given Neurobion-5000.
>
> THE PATIENT, AT THE PRESENT TIME CLAIMS THAT HE IS STILL GETTING ATTACKS OF "kaba" OR CHEST PALPITATIONS.

A.R. 126 (capitalization in original). The ALJ noted that plaintiff himself supplied this history. A.R. 21.

The remaining medical records related "to treatment and evaluation of the [plaintiff] long after he attained age 22," including prescriptions and x-ray results from 1996 that were "negative for tuberculosis" and from 2002 "showing no active cardiopulmonary pathology." A.R. 21.

The ALJ concluded that none of the records "contemporaneously document the treatment received by the [plaintiff] before he attained age 22 on October 1, 1974." A.R. 21. The records showed a reported history of pulmonary tuberculosis, yet "no clinical or laboratory findings, and no treatment records show[ed] any resulting deficits in the [plaintiff's] functional capacity for the

period prior to October 1, 1974." *Id.* Nor did the records "establish the severity of the [plaintiff's] condition or functional limitations on or before he became age 22." *Id.* Absent documentation that plaintiff's "ability to sustain activity was significantly restricted before he attained age 22," plaintiff could not "be considered as having more than minimal, if any, functional limitations prior to attaining age 22." *Id.* A minimal functional limitation cannot be considered severe, and absent a severe impairment, plaintiff was not found to be disabled. *Id.* at 21-22. These findings were consistent with those reached by "the Office of Disability Office of Medical Evaluation medical consultant, whose summary report and analysis [found] no severe impairment prior to October 1, 1974." *Id.* at 22.

Plaintiff also alleged that "he had feelings of depression," yet there were "no records documenting any such symptoms before October 1, 1974 when he attained age 22." A.R. 22. The ALJ further concluded that plaintiff "had no determinable limitations with respect to his ability to perform activities of daily living, to function socially and to concentrate as well as with respect to episodes of deterioration or decompensation due to any mental impairment." *Id.*

In his opposition to SSA's motion for a judgment of affirmance, plaintiff asserts, without support, that there is "honest, truthful and substantial evidence depicting his pulmonary tuberculosis in an alarming degree of severity," which limits his ability to engage in gainful employment and daily activities, such as carrying firewood or raising crops. Plaintiff's Opposition to Defendant's Motion for Judgment of Affirmance ¶ 1. He states that "[m]any people in [his] sleepy and poor village . . . knew of [his] chest condition." *Id.* ¶ 4. Plaintiff's opposition neither documents the existence of a severe physical or mental impairment nor establishes that the ALJ's decision is not supported by evidence in the record.

III.   CONCLUSION

The Court concludes that SSA's decision is supported by substantial evidence in the record. Accordingly, the motion for summary affirmance will be granted. A final Order accompanies this Memorandum Opinion.

Signed this <u>29th </u> day of <u>September</u>, 2008.

<u>            /s/            </u>  
RICHARD W. ROBERTS  
United States District Judge